Curia, per Harper, Ch.
This is case in which I take great pleasure in reversing my own judgment, and it is perhaps fortunate that the decision has been delayed until the subject has undergone so thorough an investigation as it has done in the cases of Sarah Tayne’s will, determined in the Circuit Court of the United States for Pennsylvania, by Mr. Justice Baldwyn, and in that of Vidal vs. Gerard's Executors, in the Supreme Court of the United States, 2 Howard, 127. The extent of learning and laborious research with which those cases were examined would make it matter of affectation to go over the same ground and comment on the same authorities. It will be sufficient to state briefly their results.
The former case seems to be precisely in point. Among various bequests which were in question, it will be sufficient to mention several made to different yearly or monthly meetings of friends, unincorporated societies; to vest funds and pay the proceeds, in one instance, “as an annual subscription into yearly meeting stock,” and in another, “towards the relief of the poor members belonging thereunto.” These bequests were held to be good, and the fund directed to be paid to the individuals who respectively composed the several societies. In the case of Vidal vs. Gerard’s executors, the devise was to the Mayor, Aldermen and Citizens of the city of Philadelphia, in trust to erect a College and make various improvements in the City. This may seem not precisely in point, as the devise was to a corporation, capable of taking in succession. But the whole subject was considered, and the opinion of the court was plainly intended to overrule the case of the Baptist Association vs. Hart’s executors. The very able argument of Mr. Binney,, and the *? lucid opinion of the court, delivered by Mr. Justice Story, embrace every point which could be made in the case before us. It was held, that the statute of wills, disabling corporations to take by devise, was not of force in Pennsylvania ; that the City might take property in trust, in the same way as natural persons ; that if the trust be repugnant to or incompatible with the purposes for which the. corporation was created, the devise is not void, but the court will substitute a proper trustee; and that there is no positive objection to the corporation’s taking property upon a trust not strictly within the scope of the direct purposes of its institution, but collateral to them. It adds to the authority of the decision, that Mr. Webster in his argument does not controvert the principles which were contended for and established as applicable to charitable uses, but insists that the use in question cduld not be regarded as a charitable one, in consequence of the prohibition of any clergyman’s entering the College and of any particular religious opinions being taught.
I understand these principles to be settled by the decisions refered to. If there be a bequest to a society, by that name, the individuals composing it, who may be identified by evidence, take as natural persons, in the same manner as if each had been particularly named; and that if it be upon a lawful, trust, they will be compelled to execute it. There was some difficulty in England, from the circumstance that a gift of land, made in such terms, gave only a life estate, for want of words of inheritance, But with us, where no words of inheritance are necessary, I do not perceive why a society by that name should not take the fee. I suppose that such an estate would not come within our Act of 1791, (a) providing for the distribution of intestates’s estates, bu1- that the descent must be according to the course of the common law. Justice Baldwyn observes that incorpora-tions were originally established to enable religious societies, the individuals composing which were regarded as men dead in law and incapable of taking as natural persons, to take in succession. There was never need of a charter to enable societies to purchase chattels.
It is decided that devises to charitable uses will be established and enforced, when similar devises for other purposes would be void for yagueness or uncertainty. By Very elaborate research it is shown that such charitable uses were familiar to the law *107 from its earliest records, and the subject of chancery jurisdiction before the statute 43 Eliz. and independently of it. In a note to Tidal vs, Gerard’s executors, more than 50 cases are refered to, selected from a calender of chancery decisions, made up by a commission, from records in the Tower of London, which were decided previously to the statute 43 Eliz. of bills to enforce charitable uses. Mr. Justice Story observes, in relation to these cases, that “they establish in the most satisfactory and conclusive manner, that cases of charities, where there were trustees appointed, for general and indefinite charities, as well as for specific charities, were familiarly known to and acted upon and enforced in the Court of Chancery, In some of these cases the charities were not only of an uncertain and indefinite nature, but as far as we can gather from the imperfect statements in the printed records, there were also cases where either no trustees were appointed, or the trustees were not competent to take.” They shew very conclusively, also, that persons having only a general and indefinite interest, such as the complainants have as members of the religious society, may sustain the bill and enforce the use.
It appears very satisfactorily that, supposing the jurisdiction not to have existed before the statute 43 Eliz. it has grown up since, and become so firmly established as to be authoritative with us, and this not by virtue of the Chancellor’s authority in administering the King’s prerogative, but 'of his own proper chancery jurisdiction. The statute only authorized a proceeding by commission directed to the ordinary and his officers, and gives the chancellor only appellate jurisdiction. But many cases are found of an original proceeding by bill, and where the Chancellor set aside the judgment of the commissioners, as being beyond their jurisdiction, or gave relief by virtue of his proper and original jurisdiction. That the jurisdiction is not depend-ant on the statute is very variously illustrated. The statute provides only for twenty one sorts of charitable uses, while forty six are recognized by the cases as capable of being enforced. Many uses, as in favor of towns, colleges, <fec., are expressly excepted out of the statute, but the jurisdiction of chancery to administer them has never been doubted. There were various English statutes prior to the 43 Eliz. providing for the execution of charitable uses, when the societies which administered them had become extinct. Mr. Justice Story refers to the opinions and decisions of Sir John Leach, Sir Joseph *108 Jekyll, Lord Northington, Lord C. J. Wilmot, Lord Redesdale, and of Lord Chancellor Sugden, in opposition to the dictum of Lord Loughborough, on which the case of the Baptist Association vs. Harfs executors was principally decided. Mr. Justice Story quotes the opinion of Lord Redesdale that the statute “only created a new jurisdiction. It created no new law. It created a new and ancillary jurisdiction,” (fee.
There can be no doubt that a trust for the support of religion is a charitable use ; and with us, where all sects of the Christian religion stand upon an equal footing, there can be no question with respect to a superstitious use.
In the argument of the present case, decisions were quoted, from nine of the States of the Union, establishing such charitable uses. Contrary decisions have been made in Virginia and Maryland, and they are supposed to have been made in conformity to the decision in the Baptist Association vs. Hards executors. As the State of Virginia had actually repealed the statute 43 Eliz. on which charitable uses were supposed to depend, it might seem to have repudiated such uses.
There seem to be several distinct kinds of charitable uses, requiring a different method of proceeding. First, there is what is called a charity at large, where there is a gift simply to purposes of charity, without the appointment of any trustee. This sort of use I do not understand to have ever appertained to the jurisdiction of the Ghancellor as a Court of Equity, but to have been enforced by him under the authority of the King’s sign manual and by virtue of the prerogative. I do not think that it would be within the jurisdiction of this court to set up such a charity as this, and devise a scheme for carrying it out. It would probably appertain to the Legislature, on which most of the royal prerogative has devolved, such as the granting of charters and franchises, (fee. Another instance is, where trustees are appointed, but the objects are so vague and indefinite, that if the gift were to any other purpose than charity, the court must declare the trust void for uncertainty; as in the instance of Morice vs. The Bishop of Durham, 9 Ves. 399, where the trust was to such objects of benevolance and liberality as the Bishop of Durham should approve. To a bill for setting up a charitable use of this sort, I think the Attorney General ought to be a party, to aid the court in devising the specific scheme for carrying it out. The third class comes under the general rules applicable to all trusts whatever, whether for charitable or any other purposes. *109 It is the well known and universal rule of the court, that if the object of the trust be lawful, and sufficiently specific and definite to enable the court to execute it, it shall never fail for the want of a trustee. To a bill of this sort the Attorney General is not a necessary party, and the present seems to me to be a case of this sort. The devise is not merely to such purposes as the Conference may direct, but specifically to support Sunday Schools, buy and distribute bibles, &c. These trusts the court can execute.
Admitting the individuals composing the congregation of the Liberty Methodist Church to be capable of taking in trust, yet it is manifest that they are entirely unsuitable for exercising it. Our courts have, I believe, gone further than most courts of chancery elsewhere, in changing trustees as the exigency of cases may require. An individual, or a limited number of individuals, are better adapted to carry out the views of the testator. I think the congregation, however, ought to be permitted to select their own trustees, and I believe it is competent for us to give such direction.
It is therefore ordered and decreed, that the circuit decree be reversed, that the congregation of Liberty Methodist Church in Marion district be at liberty to elect a trustee or trustees (not exceeding three in number) at any time before the next sitting of the Court of Chancery for the said district, and that, upon such election being made and certified to the satisfaction of the commissioner, he report upon the fitness of such appointment, or that if the said congregation shall fail to elect, he report upon a suitable person to be appointed trustee, and whether such trustee or trustees ought to give security for the faithful discharge of his or their trusts; that if any vacancy of the office of trustee shall hereafter occur, it may in like manner be filled by election, subject to the confirmation of the court. And it is further ordered, that upon the appointment of such trustee or trustees the defendant, Joseph A. Jolly, account before the commissioner, and pay and deliver over to the said trustee or trustees all the estate, real and personal, and the issues and profits thereof, which was of the testator John Burnet deceased, and which came into the hands of the said defendant, to be held by him or them in trust to appropriate the issues and profits of the estate paid and delivered over, to the uses and purposes which the Methodist Conference to which the said Liberty Church is attached, maja-deen! most advantageous for said Church, more especially for *? the support of Sunday Schools, for the purchase of bibles and religious tracts, and the distribution of the same among the destitute, and for the support of Missionaries; and that such trustee or trustees account annually before the commissioner. As the defendant states that the next of kin of the testator have assigned their claims on the estate to him, and he has litigated for his own benefit, he must pay the costs, and it is ordered accordingly.
(a) Vide Gibson vs McCall, 1 Richardson’s Rep. 174- R-
The whole court concurred.

 5 Sta't. 162.